1842.

IN THE MATTER
OF THE WATER
COMMISSIONERS
v.
LAWRENCE.

In the matter of the WATER COMMISSIONERS and WILLIAM
BEACH LAWRENCE.

---

The act for supplying the city with water authorizes the commissioners to enter upon lands and agree with owners of any property "which may be required for the purposes of the act;" and in case of disagreement as to "any property which may be required for the said purposes or affected by any operation connected therewith as to the amount of compensation to be paid to such owner, &c." then the V. C. is to appoint appraisers to examine the property and to estimate the value or damages to be paid : *Held*, that the commissioners could claim to take the fee of land, although they might only want it for its materials, and even though it was not within but adjoining the line of their aqueduct.

Such commissioners, however, can only take private property for legitimate purposes and in strict conformity with the statute and plan for supplying the city with water.

*Also held* that, though the commissioners had, therefore, taken land from an owner for the purposes of the aqueduct, yet their powers were not then exhausted as to him, but that they could, while the work was unfinished, again recur to his lands and require more of it, if necessary.

Rule of compensation where the fee is required by public commissioners, although they want the land only for the materials which are upon it.

---

*August* 5.
1842.

*Water
Commis-
sioners.
Taking
private pro-
perty for
public pur-
poses.
Compensa-
tion.*

THE commissioners for supplying the city of New York with water (from the Croton river) now required a piece of land belonging to William Beach Lawrence. They already had taken, under the provisions of the act, certain of his land which was under the direct line of their aqueduct; and wanted adjoining ground to excavate materials from, so that the same might be used for embankments and otherwise; but no part of the aqueduct itself was to be placed thereon and yet they claimed to take the fee under appraisement. It is true that the commissioners did want a small part of the land (twenty feet square) at this time proposed to be taken as a site for a permanent keeper's house.

The case had heretofore been before the court; but, from a want of notice to certain supposed parties in interest, it had gone back to the appraisers. The latter had now sent in another report; and the points embraced by the vice-chancellor's decision came up.

Mr. *D. B. Ogden*, for Mr. William Beach Lawrence.

Mr. *W. H. Harrison*, for the water commissioners.

1842.

IN THE MATTER
OF THE WATER
COMMISSIONERS
*v.*
LAWRENCE.

*August* 9.

THE VICE-CHANCELLOR :—This matter is before me on a motion to confirm the report of appraisers of two pieces of land on opposite sides of the Harlem river, proposed to be taken by the water commissioners for the purpose of the aqueduct.

The confirmation is opposed on behalf of Mr. Lawrence, the owner.

One object and the principal one in requiring these lands is, to get at materials (earth and stone) to be used in constructing the aqueduct bridge over the Harlem river ; and another, to have a site for a small dwelling house, to be built for the keeper of the bridge or aqueduct, when the same shall be completed. For the latter purpose a much smaller portion of the land than is now proposed to be taken would suffice.

The objection (taken for the first time on the hearing of this motion) that there had been no disagreement, between the water commissioners and the owner, to warrant the appointment of appraisers, is too late. It should have been made at the time of the application for appraisers. Omitting then to raise the question and suffering the proceedings to go on, is a waiver. And from what now appears, it is very evident there would have been a disagreement about the price or compensation, if, in fact, there was none, had any negotiation for a voluntary surrender of the land been attempted.

The next and more important question is, whether the water commissioners have a right to take the fee or entire ownership of land, when the principal object is to obtain earth and stone to be used as materials in the construction of their works ?

In behalf of the owner, it is contended that the commissioners have no authority or right, by law, to acquire anything more for such purpose than a temporary use of the land, paying for the materials they may take and for such damages to the land itself as may be occasioned by the excavation, &c. Whether this be so, depends upon the extent of their powers as conferred by the act of the 2d of May, 1834, entitled, " An act to provide for supplying the city of New York with pure and wholesome water." By the 12th and 13th sections of the

act, they are authorized "to enter upon any land or water for the purpose of making surveys; and to agree with the owner of any property which may be required for the purposes of the act, as to the amount of compensation to be paid to such owner." And "in case of disagreement between the commissioners and the owner of any property which may be required for the said purposes, or affected by any operation connected therewith, as to the amount of compensation to be paid to such owner, &c." then the vice-chancellor is to appoint appraisers to examine the property and to estimate the value or damage to be paid therefor. Here, then, is full authority granted to the commissioners to enter upon and take any land or water that it may become necessary to have for the successful accomplishment of their undertaking.

There is no limit to their power to take any property they may think proper to require for the purpose or in respect to the permanency of the use they may make of it or of the title they may wish to have transferred; and in a case between them and Mrs. Beekman, I have lately decided that they are to exercise their own judgment in regard to what property they will take and the necessity or expediency of taking it, and so long as they shall appear to act in good faith and within the scope of their powers, I am bound to appoint appraisers of any particular piece of property they may designate as being requisite for the completion or management of the aqueduct. And upon the same principle, they must be allowed to determine how far these operations or any thing connected with them will require the permanent use of lands and the consequent change of the entire ownership or the usufruct for a time only. The only restriction upon or limit to their power is as regards the purpose for which private property may be taken. The purpose must be such as conforms to the plan adopted of supplying the city with water. That plan is to furnish the supply from the Croton river, by means of a covered aqueduct, such aqueduct to be brought over the Harlem river upon a high bridge so called or by a tunnel under the bed of that river, as finally settled by a recent act of the legislature. It is for no other purpose that property can be compulsorily taken by the water commissioners nor can they depart from the plan of the work just mentioned in any of their proceedings. They

1842.

IN THE MATTER OF THE WATER COMMISSIONERS v. LAWRENCE.

1842.

IN THE MATTER
OF THE WATER
COMMISSIONERS
*v.*
LAWRENCE.

cannot, for example, take property against the will of the owner to be applied to the purpose of supplying the city with water from any other source than the Croton or in any other way or manner than by means of a covered aqueduct. Their authority is confined to this definite object, but, in the exercise of that authority, they are unlimited in their discretion and judgment as to the particular parcels of private property they may think proper to take and in their determination to take the fee or the usufruct of the land for temporary purposes, as they may deem best. And there can be no danger to the landholder, especially in Westchester county, from an improper exercise of judgment or discretion in this respect or from any abuse of the powers of the commissioners.

We have now in force an amendatory act of the legislature, passed in May 1836, declaring that lands situated in Westchester county which may happen to be taken by virtue of the original act, shall be held and appropriated only for the use and purpose of introducing water into the city of New-York and for purposes necessarily incident thereto, and for no other uses or purposes whatsoever; and if otherwise used or if not required for the aqueduct purposes, then the lands so improperly used or not so required shall revert to the former owner, upon just and equitable terms prescribed in the act. This takes away all inducement to the acquisition of more than can be necessary, but it, nevertheless, leaves the authority of the commissioners unimpaired; and I have no doubt whatever of their statutory right to require the fee or entire ownership of land to be transferred to the corporation, even where the sole object is to obtain materials to be used in the construction of the work they have in charge, subject however to the reversionary right declared by the amendatory statute, whenever such right shall afterwards accrue. The case of *Jermain* v. *Waggener*, 1 Hill, 279, has been cited to show that the water commissioners, having by agreement or by a previous compulsory proceeding taken lands from the same individual for the purposes of the aqueduct, they are *functus officio*, as regards the taking of any other or more land from the same owner. The case cited is not an authority at all applicable to the present, on this question. It merely decides that canal commissioners having adopted a plan for raising the waters of a lake

by means of a dam to the height necessary for the canal, which plan they were required to adopt preliminary to the commencement of the work, and having built the dam accordingly, they could not afterwards depart from the plan thus adopted and authorize an individual to raise the waters of the lake .by means of another dam as a substitute for, a. part of the work they were to construct, so as to exempt him from liability in an action on the case for overflowing the lands of the plaintiff. And the court say that the powers of the commissioners were *quasi* judicial and having once passed upon the plan, their powers were at an end. But the case in hand is very different. Here has been no departure from the original plan of the aqueduct—no substitute has been proposed or adopted—the powers which the water commissioners still exercise are a part of the powers originally conferred, to construct the work; and which also do not cease until the work is completed; till then they are not *functus officio;* and according to my view of the subject, their power to take private property is not restricted to one taking, but may be exercised as often as in their judgment it may become necessary during the progress of the work. The question then arises, what ought to be the rule of compensation where the object in requiring the fee or entire ownership of the land is to obtain materials therefrom for building purposes? Were the appraisers bound to take that fact into consideration and estimate the value of earth and stone as materials, or were they at liberty to estimate the value of the land by the acre as though it were taken for tillage or for building sites or other ordinary use to which the soil and surface is generally applied?

It appears from the affidavits laid before me that the appraisers took the latter view of the subject and made their estimate, refusing to hear any evidence of the relative value of earth and stone by cubic measurement as materials, or what such materials would cost, if the commissioners were obliged to purchase in that way, and what prices by the cubic yard had been paid or offered by contractors in other places on the line of the aqueduct for such materials.

If the appraisers have not adopted an erroneous rule for estimating the value of the land or damages to the owner, then whether the amount is too little or too much is a matter which,

according to repeated decisions, I will not undertake to inquire into by way of review ; but if they improperly rejected the evidence of valuation by cubic measurement, as of materials, and in that respect have violated a principle or rule of law, then it would be my duty to send the report back for correction. (17 Wendell, 663, 664 ; *Dyckman and others, appellants* v. *The Water Commissioners,* MS. opinion of the chancellor.)

'The water commissioners having the right, as I have shown, to take the fee of the land even for the sake of materials, it would seem to follow that the appraisers could only regard it as land and estimate the value according to the quantity by the superficies or area, at the same time taking into consideration any particular value attached to it from location, the quality of soil, trees growing upon it or the presence of stone or minerals under the surface. And if, by compelling the owner to part with any particular piece or portion of his land, he will be seriously incommoded in the use and enjoyment of his remaining property, justice requires that such special damages should likewise be taken into the account. But if the land contain stone, such as the owner might never think of quarrying and which is of no particular use or importance, except from the contiguity of some public work about to be erected, it does not follow that because there may be a demand for the stone created in that way that he is to be compensated according to quarry prices, when it is liable to be taken and paid for as land. It would be otherwise if a quarry were already opened and in operation and commissioners came clothed with authority to take the quarry for public use. The rule of compensation then doubtless would be, the value of the property as a quarry, to be ascertained by reference to the quantity of stone, the quality of the material and the profit to the owner from the working of it. The property in question, however, is not of that description : it is strictly land, the subject of bargain and sale by the acre ; containing, it is true, an abundance of rock, capable perhaps of being quarried and suitable for the use of the commissioners, but which the appraisers were not bound to value according to the number of loads to be broken out and removed, where the subject of their valuation was presented to them in the shape of land delineated on a map with

the area given and capable of being estimated by the acre. In the case of the Dyckman property at Yonkers, the water commissioners required a portion for the site of the aqueduct, with the privilege of taking stone to be used in its construction; the owners claimed a large allowance on account of the stone and a number of witnesses were examined to prove the price of quarried stone and the quantity in the land and what, in their opinion, was the immense value of the land for quarrying purposes. The appraisers disregarded the mere opinions of the witnesses; and having examined the land themselves, awarded three thousand dollars for about five acres and a half, including the stone—and their award was confirmed here and also on appeal to the chancellor. In his opinion the chancellor remarks that taking all the testimony into consideration, in connection with the report of the appraisers upon their oaths, he had no doubt that the appellants would, by the payment of the three thousand dollars, get the full value of their five acres and a half of land, with all its privileges for quarrying stone thereon, and probably double what any other person would pay them in cash for the same if this aqueduct had never been contemplated, for it was evident the high estimate of the value by some of the witnesses arose from the fact that the construction of the aqueduct itself had very much enhanced the value of such stone quarries in its neighborhood. And so in this case, it appears from the affidavits on the part of Mr. Lawrence that the great effort has been to enhance the appraisement by means of the use to which the land is to be applied and also on account of the proximity of the high bridge as adding to the value. To allow the former as a reason for encreasing the valuation to the extent claimed, would be to allow the owner to take an undue advantage of the public necessity and the latter consideration is founded altogether on mere opinion of an imaginary benefit, and is moreover liable to the same objection as to the former.

Some reliance is placed upon a dictum of Bronson J. in *Baker* v. *Johnson*, 2 Hill's R. 342—" that the appraisers will, of course, take into consideration the fact that there was stone in the land which has been appropriated to public use." I agree that such facts may be taken into consideration. It corresponds with what I have already said; and I must suppose,

until the contrary appears, that the appraisers in this instance have not disregarded their duty in that respect. True, Mr. Lawrence states in his affidavit, " that their award as to land on both sides of the river was, as stated by the appraisers, wholly irrespective of the value of materials either for the aqueduct or for any other purpose." I take the meaning of this to be, that they refused to put a valuation upon the earth and stone as materials distinct from the land itself; and, as I have before attempted to show, they were not bound to proceed upon the principle of taking materials at a valuation. He further states that " the estimate was made as farming land, without regard to its peculiar location or to its adjoining the high bridge, &c. ; and that the appraisers likewise refused to admit any evidence showing the enhanced value of the land owing to its adjoining the bridge or from any cause resulting from the establishment of the said bridge or aqueduct." I have sufficiently remarked already upon the idea of an enhanced value, by reason of the bridge or aqueduct being built so near to the land. That circumstance is not a reason for additional compensation. It would be suicidal to allow it ; and, as respects the appraisers treating the land as farming land, without regard to its peculiar location, &c. it seems to me that the best evidence to show that its peculiar location has not been entirely disregarded is that the appraisers have allowed at the rate of six hundred dollars per acre for it ; and where is the land for farming purposes that is worth that price ? I do remember that in the day of high prices for land and its products, lands in Westchester county on the line of the aqueduct were represented to be worth three hundred dollars an acre for agricultural purposes, but I do not remember that any one had the boldness to fix a higher valuation upon farming land of the very best quality and description in the county.

On the whole, I see nothing in this case to require the sending of it back for a new appraisement. No irregularity in the present proceedings of the appraisers has been suggested. They appear to have acted under the solemnity of their oaths and upon a full view and personal inspection of the lands they were to appraise. A former report of the same amount was sent back, not because it was inadequate, but, according to my recollection, because the heirs of Mr. Ward, who were alleged

1842.

IN THE MATTER OF THE WATER COMMISSIONERS *v.* LAWRENCE.

to be interested conjointly with Mr. Lawrence, had not been notified of the proceedings. That objection, I presume, has now been removed ; and the report must be confirmed.

Order accordingly.