## PRATHER *v.* THE JEFFERSONVILLE, MADISON AND INDIANAPOLIS RAILROAD CO. ET AL.

RAILROAD. — *Width of Right of Way Appropriated.* — *Erection of Telegraph Poles.*—*Additional Appropriation of Land.*—By the original charter of a railroad company granted in 1846, the president and directors thereof were invested with all the rights and powers necessary for the construction and repair of a railroad between certain places named, within this State, "not exceeding sixty feet wide;" an amended charter enacted in 1849, before the construction of its road by said company, which did not expressly repeal any portion of the original charter, provided that "for the purpose of constructing said road, with all desirable appendages, and for putting and keeping the same in repair, and for doing all proper business thereon," said company was authorized "to enter upon, take and hold in fee simple all real estate and materials necessary for that purpose, doing no unnecessary damage;" the qualifying words, "not exceeding sixty feet wide," contained in the original charter, not being inserted in the amended charter, which provided that said company should, within ten years, sell and dispose of all lands granted, conveyed or released to it, "except so much as may be embraced in the width of the road allowed by the charter," etc., and also provided that when such real estate and materials necessary for such purpose could not be had by donation or fair purchase, the owner was authorized to have the damages assessed in a mode therein provided, and that all claims for damages should cease unless applied for in two years next after the company had taken possession of such real estate or materials. Said company, by its agents, entered upon and took possession of certain land, without donation, purchase, condemnation, assessment of damages or claim therefor made by the owner, but with his acquiescence; and said company constructed its railroad over said land, and erected telegraph poles, with wires thereon, on one side of said railroad, at the distance of nineteen feet from the center of the track.

*Held,* that, construing the amended charter in connection with the original charter and with the whole current of legislation in this State regulating the right of eminent domain by uniformly fixing a limit to the width of the right of way, the amended charter did not enlarge the width of the right of way, as defined by the original charter.

*Held,* also, that while said company might have acquired title to sixty feet in width of said land, if it had taken possession thereof and occupied such space; yet, having appropriated and used less than that width, its right being limited by its necessities to the extent that it occupied and used, it became entitled, not merely to the strip of ground on which the railroad track was constructed and the ground actually occupied by said telegraph poles, but, also, to the amount of land necessary for the purpose of constructing its road, with all necessary appendages, and for put-

Prather *v.* The Jeffersonville, Madison and Indianapolis Railroad Co. *et al.*

ting and keeping the same in repair, and for doing all proper business thereon, including sufficient land for the erection of telegraph poles at a safe distance from the track, together with the right to the exclusive use of the intervening space between said track and the fixture or appendage so erected.

*Held*, also, said company having so erected telegraph poles on but one side of its road and made no use of the other side, except for the purpose of keeping its track in repair, for a period of eighteen years from the time of the original appropriation, that said company possessed no right to erect telegraph poles on said other side of its track at the distance of twenty-nine feet from the center thereof, without condemnation and payment of damages in the mode provided by the law or charter by which such railroad was governed at the time of such new appropriation.

From the Bartholomew Circuit Court.

*F. T. Hord*, for appellant.

*S. Stansifer, C. Baker, O. B. Hord* and *A. W. Hendricks*, for appellees.

Buskirk, J.—This was an action by the appellant against the appellees to recover damages for trespass, in forcibly entering on appellant's lands, without right, destroying growing timber, excavating holes and erecting telegraph poles, with wires thereon, with a view to appropriate said lands, and divesting appellant thereof, without first assessing and tendering compensation therefor. And appellant seeks an injunction to prevent such possession, further use and appropriation, and to abate such structures as may have been placed there, as a nuisance, and to prevent their repetition by injunction, and all proper relief.

The appellees filed a joint answer in two paragraphs. The first a general denial, and the second a special answer. The first paragraph was struck out by appellees, and they stood on the second paragraph of answer.

The appellant filed his reply, and appellees demurred thereto, for the reason that the same did not state facts sufficient to constitute a reply to the answer. Appellant insisted that the demurrer should be carried back to the answer, to which it should be sustained. The court overruled

the demurrer to the answer, appellant excepting, and sustained that to the reply, to which exception was taken.

The appellant refusing to plead further, final judgment was rendered for the appellees.

It is indispensably necessary to an intelligible understanding of the questions of law arising in the record, that we should set out the complaint, answers and replies, and they are as follows:

"Reason W. Prather complains of the Western Union Telegraph Company, Martin Eagin, John Brisbin, Horace Scott, Dillard Rickets, and the Jeffersonville, Madison and Indianapolis Railroad Company, and says that he is the owner, in fee simple, and is now and was possessed at the time hereinafter mentioned, of the following real estate situated in Bartholomew county, in the State of Indiana, and described as follows, to wit: the east half of the southwest quarter section of section five, in township seven north, of range six east; also the north half of the northwest quarter of section eight, township seven north, of range six east; that said defendants, on the —— day of ——, 1870, without right, wrongfully and unlawfully entered on the said land of plaintiff, and did then and there, without right, chop down and destroy twelve growing trees on said land for the purpose of clearing the way for planting telegraph poles and placing wires thereon, to be used by said defendants for telegraphing purposes, and then and there dug large holes in said land and placed therein telegraph poles, numbering about two hundred, across the entire length of said land, for the purpose of acquiring a proprietary interest and easement on said lands for telegraphing uses; that plaintiff then and there removed said poles from his said land, and said defendants did then and there again put said poles on plaintiff's land, as aforesaid, and plaintiff then and there again removed them; and then and there plaintiff removed said poles seven times, and as often as removed defendants then and there followed and replaced the same; and finally then and there defendants placed said poles as aforesaid on plaintiff's lands,

and placed their telegraphic wires thereon, for the purpose of using the same for telegraphing, in defiance of plaintiff and against and over his objection; that prior thereto said defendants never assessed or caused to be assessed and tendered his damages, nor have defendants since assessed or tendered his damages, for said attempted usurpation of plaintiff's land, and said defendants threaten to replace said poles and wires as often as the same may be removed, and threaten to continue said poles on said land, with the wires thereon, for the purpose of acquiring an easement on plaintiff's said lands, and also threaten to annoy and vex plaintiff with criminal indictments and prosecutions if he shall remove said poles and wires so unlawfully as aforesaid on his lands; that if defendants are permitted to continue their said poles and wires on his said land, plaintiff will suffer great and irreparable injury therefrom; that said poles and wires interrupt him in the cultivation of his said land, and the ingress and egress and regress of his several pieces of land and the different parts thereof, and prevent the free use and enjoyment of said land by plaintiff, and essentially interfere with the comfortable enjoyment of his said property; the continuance of said poles on plaintiff's land may and will create a multiplicity of suits and continued and repeated litigation. Wherefore plaintiff demands judgment for one thousand dollars, and that defendants be enjoined from continuing their said poles on and said wires over the plaintiff's said land, or to abate them and enjoin any further erection thereof, and to enjoin them from the use and appropriation of plaintiff's land, and all proper relief."

The general denial was struck out, and the only answer was the following:

"2. And for a further and second paragraph of answer herein, defendants say that, in June of the year 1851, the Jeffersonville Railroad Company, then locating and constructing her railroad from Jeffersonville, Indiana, to Columbus, Indiana, entered upon, located and constructed her said road over, through and upon said real estate of plaintiff; and plain-

tiff made no demand for damages for said appropriation of property within two years after the taking of said property, as aforesaid, nor has he since made such a demand; and said railroad was constructed from Jeffersonville to said Columbus; and defendants say that the width of the said Jeffersonville Railroad and right of way thereof over and through said real estate of said plaintiff was, by virtue of the charter of said company, at the time of said appropriation, and now is, sixty feet, and the track of said road was constructed and is on and over the center of said right of way.

"On the —— day of April, 1866, the said Jeffersonville Railroad Company and the Madison and Indianapolis Railroad Company, then owning and operating a railroad from Madison, Indiana, through said Columbus to Indianapolis, Indiana, by proper articles of association, which were recorded in all the counties through which said road ran, consolidated and became one corporation, by the name of the Jeffersonville, Madison & Indianapolis Railroad Company, the defendant; whereby the said last named corporation became and was and is the owner of all the property, rights and franchises of said two corporations, including said road and right of way through and upon said real estate of plaintiff.

"Thereafter, to wit, on the —— day of December, 1869, the defendants, the Western Union Telegraph Company and the Jeffersonville, Madison & Indianapolis Railroad Company, entered into an agreement, which is still in force, whereby, in consideration that the said railroad company would furnish the right of way for telegraphic lines along said railroad, over the road and right of way of said railroad company, the said telegraph company would construct and keep in repair telegraph lines along said road, and furnish one wire for the exclusive use of said railroad company; and, in pursuance of said agreement, said telegraph company constructed telegraph lines along the whole length of said roads, over and above said roads and the rights of way thereof, and furnished said wire for said use of

said railroad company. Said telegraph line was constructed, as aforesaid, and it was in the construction and repairs thereof that said acts complained of in said complaint were committed, and no act was done other than was necessary for the construction and repair thereof, and for the safety of the same, and for the safety of the railroad track, and the successful and proper use of the telegraph line for the purpose of its construction and use as aforesaid. And said telegraph poles, when erected and when the line was repaired over and through the land described in the complaint, were erected and the line repaired upon ground within the sixty feet of ground through said lands owned for the purposes aforesaid by the said railroad company, and not outside thereof; and the defendants other than said corporations did no other act in the premises than to assist in said work, at the instance of said corporations.

"And defendants say that years, to wit, ten years, previous, and up to the time complained of, defendants' said corporations had erected and continuously used said telegraph line on said land, ten poles thereof being planted within said sixty feet, but nearer to said railroad track, all without objection on the part of plaintiff; and at the time complained of they were removed a sufficient distance from said track, and no further, but within said sixty feet, to prevent the poles from falling upon and obstructing the track of said road in the event of falling or being thrown down by winds or storms.

"And it is further averred, that said railroad company has telegraph offices along said line of said road at the various offices and stations thereof, connected with said wires and telegraph lines, by and through which the business of said railroad is, in a great measure, transacted, and the use of said telegraph lines, as aforesaid, by said railroad company, is necessary and essential to secure the proper speed and safety of trains, they being run by telegraph, and were so run when said contract was entered into and the acts complained of were perpetrated. And the use of said telegraph lines, as

aforesaid, are necessary and essential to secure dispatch, efficiency, safety and precision in the transaction of all the business of the said railroad."

The reply was as follows:

"1. The plaintiff, for reply to second paragraph of answer herein, says that he admits that said Jeffersonville Railroad Company was organized by charter of the legislature of the State of Indiana, which authorizes said company to appropriate so much land as may be necessary to construct said road; that said company did not seize and appropriate sixty feet in width of said land, and the same was not necessary to said road, or useful in its construction, but it appropriated and took possession of only so much of said land as is actually occupied by the track of said company, which is about four feet in width, but a single track and no switches, and no other structures of any kind thereon, except on the west side of said road, nineteen feet from the center of said track, the said railroad company had erected telegraph poles and placed wires thereon for the use of said company, and used the same from the time of constructing said road; but defendants erected the poles complained of in complaint on the east side of said railroad track, as averred therein, without right, twenty-nine feet from the center of the track, and said company has at no time held or possessed or appropriated any other portion of said land under said charter.

"That said track of said railroad passes over the plaintiff's land as aforesaid, but said plaintiff has at all times exclusively possessed and occupied all said land on either side of said railroad track and has fenced the same from time to time up to the track as the same was necessary for plaintiff's use, and has had the entire and undisputed control and management thereof. He admits that on the —— day of ——, 1866, the said Jeffersonville Railroad Company consolidated with the Madison & Indianapolis Railroad Company, and then and there created a new corporation under the general railroad law of the State of Indiana, by the name of the Jeffersonville, Madison & Indianapolis Railroad Company;

that all rights asserted and acquired by the said Jefferson-ville Railroad Company, under its said original charter, passed by the consolidation to said new organization; that the only right it acquired in and to the plaintiff's land, by virtue of said original charter, was to that portion actually possessed, occupied and appropriated by said company prior to and at the time of said consolidation, and no more passed to said new corporation; that all said land was owned, pos-sessed and occupied by plaintiff up to the irons making the railroad track; that said defendants planted, erected and have maintained their said telegraph poles, at the time and in the manner averred in the complaint, on the east side of said track, twenty-nine feet from the center of said track on plaintiff's land, on a portion of land at all times possessed, occupied and cultivated by plaintiff, without first assessing and tendering to plaintiff his damages as required by the law and constitution of the State of Indiana; that said rail-way company has at no time ever assessed or tendered to plaintiff any damages for the occupation of his land, and no other person or company has ever done so, and the plain-tiff has not deeded or otherwise transferred said land to defendants, or either of them; that said railroad company, or other company or person other than plaintiff, has at no time occupied said land wherein said poles were planted, but the same has at all times been owned and adversely possessed and occupied by plaintiff.

"2. The plaintiff, for reply to the second paragraph of answer herein, says that he admits that the origin of the Jeffersonville Railroad Company was under a charter passed by the legislature of the State of Indiana, approved Jan-uary 20th, 1846, section 14 of which provides, 'that the presi-dent and directors of said company shall be, and they are hereby invested with all the rights and powers necessary for the construction and repair of a railroad from the town of Jeffersonville, near the falls of the Ohio, to the town of Columbus, in the county of Bartholomew, not exceeding sixty feet wide, with as many set of tracks as the said presi-

dent and directors may deem necessary; and that they may cause to be made, or contract with others for making said railroad or any part of it, and they, their agents or those with whom they may contract for making any part of the same, or their agents, may enter upon and use and excavate any land which may be wanted for the site of said road, or the erection of warehouses or other works necessary to said road or for any other purpose necessary or useful in the construction or repair of said road, or its works,' etc.; and section 15 thereof provides, that if said company and the owner of the land cannot agree about the land sought by said company, application may be made to any justice of the peace in the county where such lands may be, who shall thereupon issue his warrant directed to the sheriff of the county requiring him to summon a jury of twenty inhabitants to meet on the land, twelve of whom shall be selected as jurors, to whom the sheriff shall administer an oath that they will justly and impartially value the damages which the owner will sustain by the use or occupation of the land, and the jury shall reduce their inquisition to writing, and shall sign and seal the same, and it shall then be returned by the sheriff to the clerk of the circuit court of his county, which shall be confirmed by the circuit court at its next session, if no sufficient cause to the contrary be shown, and when confirmed to be recorded by the clerk; and such valuation, when paid or tendered to the owner of said property, shall entitle the said company to the estate and interest in the same, thus valued, as fully as if it had been conveyed.

"That at the time of making said charter, plaintiff was the owner in fee of said land set forth in complaint, and has been continually since; that said Jeffersonville Railroad Company did not, and no other corporation or person has ever at any time assessed and tendered or paid plaintiff any damages or compensation for said land, or any portion thereof, or interest therein, but plaintiff avers that, by consent and verbal license, he authorized said railroad company to use and occupy so much of his said land as would be

necessary to run a single track of their railroad thereon, about four feet in width, without switches or other structures thereon, and to erect for the use of said road telegraph poles along said track on the west side thereof, with telegraph wires thereon; and the plaintiff never, at any time, gave said railroad company or other corporation or person license to occupy more ground than as aforesaid, and said Jeffersonville Railroad Company did not at any time hold, possess, occupy or appropriate any other portion of said land under said charter, and said railroad company did not possess or otherwise hold the same than by the verbal license of the plaintiff. And plaintiff has at all times exclusively possessed, occupied and cultivated all said land, and fenced the same on the east side of said track up to said railroad track, and on the west side up to said telegraph poles, originally erected by said company for its own use, and plaintiff has at all times had the entire and undisputed control and possession thereof, and plaintiff has at no time licensed, released, or otherwise granted to said railroad company, or other corporation or person, said land or any other portion thereof, or any interest therein, except as aforesaid.

"He avers that said railroad company, organized as aforesaid, never did possess or appropriate any more of plaintiff's land than that occupied by a single track of its road, which is about four feet in width, and the space actually occupied by the said telegraph poles on the west side of said track, at intervals of considerable space, about four feet from the said track; and this was by plaintiff's verbal license; that said railroad company never did possess or appropriate sixty feet in width of plaintiff's land, and so much was not necessary for the construction of said road.

"He avers that on the —— day of ——, 1866, said Jeffersonville Railroad Company, organized as aforesaid, consolidated with the Madison and Indianapolis Railroad Company, and then and there created and organized a new corporation under the general railroad law of the State of

Indiana by the name of the Jeffersonville, Madison and Indianapolis Railroad Company.

"That the said Jeffersonville Railroad Company, or the Jeffersonville, Madison and Indianapolis Railroad Company, or other corporation or person or persons, never did occupy, possess or appropriate more than nine feet in width of plaintiff's said land, which is set forth above, until on the ―― day of ――, 1870, said defendants attempted, as averred in the complaint, to plant telegraph poles and erect four wires thereon—one wire for the use of said railroad and three for the use and profit and emolument of said telegraph company—on the east side of said railroad track, twenty-nine feet from the center of said railroad track, on plaintiff's said land, at a point which plaintiff owned in fee simple, prior to the making of the said charter to the said Jeffersonville Railroad Company, and has ever since continued to own, adversely occupy, and exclusively possess, and which said railroad company and no other company or person ever attempted, prior thereto, to appropriate.

"That said planting of said telegraph poles and other acts averred in complaint were on plaintiff's land, outside of any land that had ever been heretofore appropriated or occupied by said railroad company under said charter, by virtue of said license; that said defendants planted, erected, and have sought to maintain their said telegraph poles with wires thereon, along said track, and twenty-nine feet from the center of said railroad track, on the east side thereof, on plaintiff's said land, at all times exclusively owned, adversely possessed, held, occupied and cultivated by him, without first assessing and tendering to plaintiff his damages as required by the law and constitution of the State of Indiana; and plaintiff has at no time released, conveyed, or otherwise transferred said land or any portion thereof, or any interest therein, to defendants, or either of them, or consented to any occupation of said land; but said attempted appropriation of said land was and is wrongful and without right; and plaintiff demands judgment."

The errors assigned are the sustaining of the demurrers to the first and second paragraphs of the reply, and the overruling of the demurrer to the answer.

Three questions are discussed by counsel:

1. The width of the right of way acquired by the Jeffersonville Railroad Company.

2. The character of the interest of the company in the right of way, whether a fee simple or a mere easement.

3. If a mere easement, was it of such a character as warranted the erection of the telegraph poles in question within the width of the right of way?

The first question presented by the record is, whether the court erred in overruling the demurrer to the second paragraph of the answer. The material part of said answer is in these words:

"2. And for a further and second paragraph of answer herein, defendants say that in June of the year 1851, the Jeffersonville Railroad Company, then locating and constructing her railroad from Jeffersonville, Indiana, to Columbus, Indiana, entered upon, located and constructed her said road over, through and upon said real estate of plaintiff; and plaintiff made no demand for damages for said appropriation of said property within two years after the taking of said property, as aforesaid, nor has he since made such a demand; and said railroad was constructed from Jeffersonville to said Columbus; and defendants say that the width of the said Jeffersonville Railroad and right of way thereof over and through said real estate of said plaintiff was, by virtue of the charter of said company, at the time of said appropriation, and now is, sixty feet, and the track of said road was constructed and is on and over the center of the said right of way."

The answer proceeds upon the theory that the charter under which the appellee was organized granted a right of way sixty feet in width, without any act on her part declaring how much was necessary for the construction and repair of her railway, and without defining the width desired

to be appropriated, and that an actual occupation of any part of appellant's land gave to the company sixty feet in width.

It becomes necessary that we should institute an inquiry into what rights were created and what powers were conferred by the charter of the appellee.

A portion of the fourteenth and fifteenth sections of the original charter are set out in the reply, but it is necessary that they should be set out in full. They are as follows (Local laws of 1846, pp. 156 and 157):

" Sec. 14. That the president and directors of said company shall be, and they are hereby invested with all the rights and powers necessary for the construction and repair of a railroad from the town of Jeffersonville, near the falls of the Ohio, to the town of Columbus, in the county of Bartholomew, not exceeding sixty feet wide, with as many set of tracks as the said president and directors may deem necessary; and that they may cause to be made, or contract with others for making said railroad or any part of it, and they, their agents or those with whom they may contract for making any part of the same, or their agents, may enter upon and use and excavate any land which may be wanted for the site of said road, or the erection of warehouses or other works necessary to said road, or for any other purpose necessary or useful in the construction or repair of said road, or its works; and that they may build bridges, provided the same do not obstruct the navigation on navigable streams; may fix scales and weights; may lay rails; may take and use any earth, timber, gravel, stone, or other materials which may be wanted for the construction or repair of said road or any part of its works, and may make and construct all works whatsoever, which may be necessary and expedient, in order to the proper completion of said road.

" Sec. 15. That the president and directors of said company, or a majority of them, or any person or persons authorized by a majority of them, may agree with the owner or owners of any land, earth, timber, gravel, or stone, or other materials, or any improvements which may be wanted for

the construction or repair of any of said road, or any of their works, for the purchase, or use and occupation of the same; and if they cannot agree, and if the owner or owners of any of them be a *feme covert*, under age, *non compos mentis*, or out of the county in which the property wanted may lie, when such land or materials shall be wanted, application may be made to any justice of the peace in the county where such land or materials shall lie, who shall thereupon issue his warrant, under his hand and seal, directed to the sheriff of said county, requiring him to summon a jury of twenty inhabitants of said county, not related or in any wise interested, to meet on the land or near to the other property or materials to be valued, on a day named in said warrant, not less than ten nor more than twenty days after the issuing of the same; and if, at said time and place, any of said jurors summoned do not attend, the said sheriff shall summon immediately as many jurors as may be necessary with the jurors in attendance, to furnish a panel of twenty jurors in attendance; and from them each party, its, his, or her, or their agent, if either be not present in person or by agent, then the sheriff, for it, him, or her, may strike off four jurors, and the remaining shall act as the jury of inquest of damages; and before they act as such, the said sheriff shall administer to each of them an oath, or affirmation, as the case may be, that he will justly and impartially value the damages which the owner or owners will sustain, by the use or occupation of the land, materials or other property required by the company; and the jury estimating such damages, shall take into the estimate the benefit resulting to the owner or owners from the construction of the said railroad through, along or over the property of said owner or owners; but only in extinguishment of the claim for damages; and the jury shall reduce their inquisition to writing and shall sign and seal the same, and it shall then be returned by the said sheriff to the clerk of the circuit court of his county, and by such clerk filed in his office, and shall be confirmed by the circuit court of said county at its next session, if not sufficient cause to

the contrary be shown; and when confirmed shall be recorded by said clerk, at the expense of said company; but if set aside by said court, for good cause shown, the said court shall direct another inquisition to be taken in the same manner as above prescribed; and such inquisition shall describe the property taken or the bounds of the land condemned; and the quantity or duration of the interest of the owner or owners in the same, valued for the company; and such valuation, when paid or tendered to the owner or owners of said property, or his, or her, or their legal representative, shall entitle the said company to the estate and interest in the same, thus valued, as full as if it had been conveyed by the owner or owners of the same; and the valuation if not received when tendered, may at any time thereafter be received from the company, without cost, by the owner or owners, his, her, or their legal representative or representatives."

The fifteenth section authorizes the company, through her officers and agents, to agree with the owner of land or material for the purchase, use or occupation of the same, and if they fail to agree in reference thereto, provision is then made for the assessment of damages, in which the company is required to take the initiative. It is then provided, that such inquisition shall describe the property, or the bounds of the land condemned, and the quantity or duration of the interest of the owner or owners in the same, valued for the company; and such valuation, when paid or tendered to the owner or owners of said property, or to his or her or their legal representative, shall entitle the said company to the estate and interest in the same thus valued, as fully as if it had been conveyed by the owner or owners of the same, etc.

It is agreed in the briefs of counsel, that no steps were taken by the appellee, under the above section, to appropriate the lands of appellant, and that before the appellee took possession of such lands her charter was amended and materially changed. On the 15th day of January, 1849, an

amendatory charter was passed, the third and fifth sections of which have an important and controlling bearing upon the questions involved in the present case; for it was under the amended charter that the lands of appellant were taken possession of, and the respective rights of the parties are to be determined by the amended charter, when construed in connection with the original charter.

The third section of said act reads as follows:

"Sec. 3. It shall be lawful for said railroad company to take, hold, sell and convey any and all lands and tenements which may be conveyed or granted or released to said company for the purpose of constructing and keeping in repair the work authorized by the act incorporating the Ohio and Indianapolis Railroad Company, referred to in the first section of this act: Provided, such company shall, within ten years from such grant or conveyance, sell or dispose of all such lands as may be so granted, conveyed or released, except so much as may be embraced in the width of the road allowed by charter and for depot grounds and water stations for said road, and an additional amount, not exceeding three thousand acres, which said company may retain and possess for the purpose of supplying timber and stone for the construction and use of said road."

The fifth section of the amended charter is as follows:

"Sec. 5. For the purpose of constructing said road, with all desirable appendages, and for putting and keeping the same in repair, and for doing all proper business thereon, said company are hereby authorized to enter upon, take and hold in fee simple, all real estate and materials necessary for that purpose, doing no unnecessary damage, and when such real estate or materials cannot be had by donation or fair purchase, the owner may file his claim for damages in the office of the secretary of the company, and select an arbitrator, whereupon the company shall select another, and these two a third, who shall be disinterested men, and, within a reasonable time, having been sworn, they shall proceed to examine the case, and make out and file their award in the

premises with said secretary, from which award either party may appeal to the circuit court of the county where the secretary keeps his office; which appeal shall be in all things regulated and tried as appeals are from the judgment of a justice of the peace in this State; said secretary being regarded as such justice in this behalf, and whenever [any] real estate is so taken, or is damaged, the arbitrators, court or jury trying the case shall estimate any and all advantages said road may be to the other real estate of the claimant adjacent or contiguous to that taken, deduct such advantages from the damage done, and find for the claimant the balance only, if any there be; if there be none, the claimant shall pay all costs; if damage be recovered, the company shall pay the cost; and that all claims for damages shall cease unless applied for in two years next after the property shall have been taken possession of by said company."

There is no express repeal of any portion of the original charter in the amendatory act. If there is any repeal it is by implication.

In the fourteenth section of the original charter, the word "necessary" is limited by the use of the qualifying words, "not exceeding sixty feet wide." In the fifth section of the amended charter, there are no such qualifying words, and the question arises whether such omission is to be construed into a repeal of the fourteenth section of the original charter, so far as it limited the width of the right of way to sixty feet.

It is a settled rule of construing statutes, that one part of an act of the legislature may be referred to in aid of the interpretation of other parts of the same act. So in case of doubt or uncertainty, acts *in pari materia*, passed before or after, and whether repealed or unrepealed, may be referred to in order to discern the intent of the legislature in the use of particular terms; and, within the same rule and the reason of it, contemporaneous legislation, although not precisely *in pari materia*, may be referred to for the same purpose. Statutes *in pari materia* relate to the same subject, the same person or thing, or the same class of persons or things, and

are to be read together, for the reason that it is to be implied that a code of statutes relating to one subject is governed by the same spirit, and they are intended to be harmonious and consistent. They are to be taken together, as if they were one in law, as one statute. 1 Kent Com. 463; *Church* v. *Crocker*, 3 Mass. 17; *Mendon* v. *County of Worcester*, 10 Pick. 235; *United Society* v. *Eagle Bank*, 7 Conn. 456; Bacon's Abr., tit. Statute, I. 3; *McWilliam* v. *Adams*, 1 Macq. Ap. Cas. 120; *Rogers* v. *Bradshaw*, 20 Johns. 735; *M'Cartee* v. *Orphan Asylum Society*, 9 Cow. 437.

It is provided in the third section of the amended charter, "that said company shall, within ten years from such grant or conveyance, sell and dispose of all such lands as may be so granted, conveyed, or released, except so much as may be embraced in the width of the road allowed by charter and for depot grounds and water stations for said road." Construing the third and fifth sections of the amended charter in connection with the fourteenth section of the original charter, we think it is quite obvious that the legislature did not intend to enlarge the width of the right of way as defined by the original charter. The views above expressed are greatly strengthened by the whole current of legislation in this State regulating the exercise of the right of eminent domain, which uniformly fixes a limit to the width of the right of way. We cannot assume that the legislature intended, by the fifth section of the amended charter, to authorize the appellee to secure a right of way without a limit as to the quantity to be taken except the necessities of the company. We are, therefore, of opinion that when the appellee entered upon and took possession of the land of the appellant, she had the right to appropriate whatever quantity was necessary for the construction, repair and operation of her road, not exceeding sixty feet in width.

By the fifteenth section of the original charter, the company was authorized, by her agents, to agree with the owner or owners of land, earth, timber, gravel or stone, or other

materials, or any improvements which may be wanted for the construction or repair of any of said road or any of their works, for the purchase or use or occupation of the same. It is further provided that if the agent of the railway company cannot agree with the owner or owners of such land and materials, such company might institute proceedings for the condemnation of such land and materials, and the assessment of the damages occasioned by such appropriation, and that such inquisition should describe the property taken or the bounds of the land condemned, and that such valuation when paid or tendered should entitle the company to the estate and interest therein as fully as if it had been conveyed by the owner or owners thereof. By this section the company was authorized to contract for the purchase or use or occupation of land and materials; and if not thus acquired, the company obtained no title to or the right to appropriate such land or materials until the same had been condemned, the damages assessed, and paid or tendered. By such section there were three ways in which the company was authorized to acquire a title to and the right to use land and materials:

1. By purchase.

2. By contract for use or occupation.

3. By condemnation, assessment of damages and the payment or tender thereof.

When acquired in the last mode, the estate and interest of the company in such land or materials would be as full as if the same had been conveyed by the owner.

By the fifth section of the amended charter, the company was, for the purposes of constructing her road with all desirable appendages, and for putting and keeping the same in repair, and for doing all proper business thereon, authorized to enter upon, take and hold in fee simple all real estate and materials necessary for that purpose; and when such real estate and materials could not be had by donation or fair purchase, the owner was authorized to have the damages assessed in the mode therein pointed out. It was further

provided that all claims for damages should cease unless applied for in two years next after the company had taken possession thereof.

By the above section there were three modes in which the company could acquire real estate and materials for the purposes therein specified:

1. By donation.
2. By fair purchase.
3. By taking possession of and using the same for the purposes therein specified.

The title of the railway company to the land in controversy was acquired in the mode last pointed out.  The company by her agents entered upon, took possession of, and constructed her road-bed over the lands of the appellant with his acquiescence and without condemnation or assessment of damages, and the question which we are required to decide is as to the extent of the interest which the company acquired in the lands of the appellant.  It is earnestly contended by counsel for the railway company, that by entering upon and constructing her road-bed over such lands, she acquired a strip of land sixty feet wide.  We cannot give our assent to the doctrine contended for.  If the company had acquired her title by purchase, or donation, or by a contract for use and occupation, or by condemnation under the fifteenth section of the original charter, the land would have been described and its bounds fixed, and the company would have acquired a paper title, which would have settled and fixed the rights of the parties.  The fact that the charter provides that the company might acquire, in one of the modes above pointed out, whatever land was necessary, not exceeding sixty feet in width, necessarily creates the implication that the legislature supposed that less than sixty feet would answer the purposes of such company.  If the company had taken possession of and occupied sixty feet in width, there can be no doubt that she would have acquired title to the whole of the strip so occupied; but having appropriated and used less than sixty feet, the extent of her right must be lim-

ited by her necessities to the extent that she had possessed, occupied and used the same.

On the other hand, it is contended by counsel for appellant, that the company appropriated and took possession of only so much of his land as is actually occupied by the track of said road, being about four feet in width, and the space occupied on the west side of said track by telegraph poles, which were set nineteen feet from the center of said track, and had been maintained there from the construction of said road until the grievances complained of in the complaint were committed; in other words, that the only right which the company acquired in and to the appellant's land was to that portion actually possessed, occupied and appropriated by said company prior to and at the time of the consolidation of said companies, and that no more passed to such new corporation. The position assumed by counsel for appellant is as untenable as that taken by counsel for appellee, and cannot be maintained. The purposes for which the company was authorized to appropriate lands are specified in the fifth section of the amended charter, and they are:

1. For constructing said road with all desirable appendages.

2. For putting and keeping the same in repair.

3. For doing all proper business thereon.

It is well settled that the taking of private property for a public use must be limited to the necessity of the case, and, consequently, no more can be condemned and appropriated in any instance than the proper tribunal shall adjudge to be needed for the particular use for which the appropriation is made. When a part only of a man's premises is needed by the public, the need of that part will not justify the taking of the whole, though compensation be made therefor. The moment the appropriation goes beyond the necessity of the case, it ceases to be justified on the principles which underlie the right of eminent domain. For public uses the government has the right to exercise its powers of eminent domain and take private property, giving just compensation; but for

public convenience, it has not.    A public convenience is not such a necessity as authorizes the exercise of the right of eminent domain.    The taking of private property for public uses is in derogation of private right, and in hostility to the ordinary control of the citizen over his estate, and statutes authorizing its condemnation are not to be extended by inference or implication.    But statutes granting these powers are not to be construed so literally or so strictly as to defeat the evident purpose of the legislature.    They are to receive a reasonably strict and guarded construction, and the powers granted will extend no further than expressly stated, or than is necessary to accomplish the general scope and purpose of the grant.    Cooley's Const. Lim. 540 to 557; *The Rensselaer & Saratoga R. R. Co.* v. *Davis,* 43 N. Y. 137; *The New York & Harlem R. R. Co.* v. *Kip,* 46 N. Y. 546; *Concord Railroad* v. *Greely,* 17 N. H. 47; *The Memphis Freight Co.* v. *Mayor, etc.,* 4 Cold. Tenn. 419; *State* v. *Noyes,* 47 Maine, 189; *The Proprietors, etc.,* v. *N. & L. R. R. Co.,* 104 Mass. 1; *In re Albany Street,* 11 Wend. 149; *Lance's Appeal,* 55 Penn. St. 16; *Gray* v. *The Liverpool & Bury R. W. Co.,* 9 Beav. 391; S. C., 4 Railw. Cas. 235; *Currier* v. *M. & C. R. R. Co.,* 11 Ohio St. 228; *Waldo* v. *The Chicago, etc., R. R. Co.,* 14 Wis. 575; *Vermont & Canada R. R Co.* v. *Vermont Central R. R. Co.,* 34 Vt. 2.

This leads us to inquire what is meant by the word "necessary" as used in both the old and new charters.    We have seen that the company possessed no power to appropriate lands for public convenience, but that it must be necessary for the purposes for which it was created.

The fifth section uses the words "with all desirable appendages."    The word "desirable" should be construed to mean "necessary."    Then what appendages are necessary for the construction, repair and operation of a railroad? Redfield on Railways, vol. 1, sec. 68, p. 261, says:

"By the English statutes, railway companies may not only purchase land for the purpose of the track, but also for all such extraordinary uses as will conduce to the successful

prosecution of their business. This includes the site of stations, yards, wharves, places for the accommodation of passengers, and the deposit of freight, both live and dead, and for the erection of weighing machines, toll-houses, offices, warehouses, and other buildings and conveniences."

In *The N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546, it is said: "The only limit to the former is the reasonable necessity of the corporation in the discharge of its duty to the public. The right to take lands upon which to erect a manufactory of cars, or dwellings for operatives, is not included in the grant; such purposes are not legitimately and necessarily connected with the management, the running and operating of the railroad. (*Eldridge* v. *Smith*, 34 Vt. 484; *Brainerd* v. *Peck*, 34 Vt. 496.) Neither can lands be taken for a mere subsidiary or extraordinary purpose. But passenger depots, convenient and proper places for the storing and keeping cars and locomotives when not in use, proper, secure and convenient places having reference to the public interests to be subserved, for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge, and before its removal by the owner or consignee, are among the acknowledged necessities for the running and operating the railroad, to the proper prosecution of the business in the interests of the public. They may be regarded as indispensable to the accomplishment of the general purposes of the corporation and the design of the legistive grant."

In the case of *Reed* v. *Louisville Bridge Company*, 8 Bush, 69, the court say: "The third section of the act of incorporation gives to the company the right to extend a railroad over their bridge, with as many sets of tracks as may be deemed expedient. The right to have and operate a railroad necessarily implies the right to keep the necessary depots for the transaction of the business of such road, and such lands as may be necessary for the erection of the depot houses can be acquired by condemnation, under the pro-

visions of the second section of said act. But it is clear to us from the language of the grant that the company has the legal right to acquire title by condemnation to no lands except such as are ' necessary' for the erection of their bridge, the construction of their railroad, and the transaction of such business as legitimately grows out of these two improvements, and for such suitable avenues as are designated in their charter. This necessity must exist as a condition precedent to their legal right to resort to the remedy given them to be enforced by the writ of *ad quod damnum.* Of the existence of this necessity the company is not to be the judge. It must be ascertained by a competent tribunal, before which the parties whose lands are sought to be taken, as well as the company, can be heard."

We proceed to make an application of the principles enunciated in the foregoing cases to the case in judgment. It is conceded that the company was entitled to a strip of ground wide enough to construct her track, but it is denied that she was entitled to any more. The road-bed is indispensably necessary to the construction of a railroad, but a railroad cannot be kept in repair and successfully operated with a strip of ground only wide enough for the track. There must be a strip of ground on each side of the track wide enough for the use of the men engaged in repairing the track, without trespassing upon the lands of adjoining owners. A wider strip of ground is required in the construction of the track in some places than in others. In some places, the ground being level, there are neither excavations nor embankments, but where these are rendered necessary a much wider strip of ground becomes necessary. Where there are excavations, the banks must be sloped upwards, and in the case of an embankment the base must be much wider than the top. So there can be no uniform rule as to the quantity of ground required for the construction of the track. There are several necessary appendages to the track itself. There must be in many cases drains or ditches to carry off the water and keep it off the track. The laws of

this State do not affirmatively require railroad companies to fence their tracks, but they impose a heavy penalty for failure to do so. All experience demonstrates that the safety of passengers and freight requires that all railroad tracks should be fenced, and that the fence should be some distance from the track. A railroad cannot be safely and successfully operated unless water-tanks and wood or coal yards are placed at convenient places along the line and near the track, so that engines may be supplied with water and fuel. Experience has demonstrated that no railroad of any considerable length can be safely and efficiently operated without the use of a telegraph, and this requires the erection of telegraph poles at a safe distance from the track. Side tracks and turn-tables are necessary appendages to a railroad; and so are depots for passengers and freight and stock-yards. The appellee was entitled under her charter to have acquired, by donation, purchase or condemnation, the necessary quantity of ground for the above purposes, not exceeding sixty feet. If land had been acquired in either of the above modes, the quantity and boundaries would have been fixed. It is well settled that a corporation in condemning and appropriating private property for public use should, in some public and definite manner, describe the property, so that the respective rights of the owner and corporation should be clearly defined and definitely fixed, and this is also necessary to enable appraisers to assess the damages sustained by the owner of the land condemned. *Ligat* v. *Commonwealth*, 19 Penn. St. 456; *The Pennsylvania R. R. Co.* v. *Porter*, 29 Penn. St. 165; *The Pennsylvania Railroad Company* v. *Bruner*, 55 Penn. St. 318; *Heise* v. *The Pennsylvania R. R. Co.*, 62 Penn. St. 67.

It is quite obvious that the appellee acquired no title to the land in dispute by condemnation. The fifth section of the amended charter authorized the company to enter upon, take and hold all real estate necessary for the purposes therein specified. Both the charters were passed, and possession of the land in controversy was taken, while the con-

stitution of 1816 was in force. Section 7, article 1, of that constitution provides, "that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without a just compensation being made therefor."

This provision, unlike the corresponding provision in the existing constitution, did not require prepayment for the property appropriated. *Rubottom* v. *McClure*, 4 Blackf. 505; *Hankins* v. *Lawrence*, 8 Blackf. 266; *McCormick* v. *The President, etc.*, 1 Ind. 48; *Falkenburgh* v. *Jones*, 5 Ind. 296; *Dronberger* v. *Reed*, 11 Ind. 420; *Allen* v. *Jones*, 47 Ind. 438

Hence, it was competent for the legislature to authorize the appellee to appropriate the land of the appellant without first making compensation. Both constitutions require compensation to be made; but the present constitution requires compensation to be made or tendered before the appropriation. The appellee, by entering upon the land in dispute and constructing its track, did not acquire a right of way sixty feet in width. If it had been the intention of the legislature to definitely and unconditionally give a right of way sixty feet in width, it would have so said, instead of providing that it might acquire whatever was necessary, not exceeding sixty feet. It acquired the right of way for the track, and the right to make drains or ditches, fences, side-tracks, turn-tables, water-tanks, wood or coal yards, and depots for passengers and freight, and to erect telegraph poles, and, so far as this right was exercised, the appropriation for such purposes became complete, and gave it the right to use whatever ground was necessary for such purposes, and the intervening space between the track and the fixture or appendage erected. The company, having erected telegraph poles on the west side of the track, nineteen feet from the centre of the track, acquired the right to keep and maintain them there, and the right to the exclusive use of the ground between such poles and the track. But the company, having failed to erect poles on the east side of the track, or to

occupy the same for any purpose but to keep the track in repair, for the period of about eighteen years from the time such land was appropriated, possessed no right to take possession of and erect telegraph poles, twenty-nine feet from the centre of the track. This was a new appropriation of the land of the appellant, which could not be done without condemnation and payment of damages in the mode prescribed by the general railroad law, if it was adopted when the two roads were consolidated; and if not so adopted, then in accordance with whatever law or charter the appellee is governed by.

It is firmly settled, that making one appropriation does not exhaust the power, but new appropriations may be made from time to time, as the necessities of a road may require. *Ligat* v. *Commonwealth,* 19 Penn. St. 456; *Kier* v. *Boyd,* 60 Penn. St. 33; *Water Commissioners* v. *Lawrence,* 3 Edw. Ch. 552; *The South Carolina R. R. Co.* v. *Blake,* 9 Rich. 228; *The Chicago, etc., R. R. Co.* v. *Wilson,* 17 Ill. 123; *The Toledo & Wabash R. W. Co.* v. *Daniels,* 16 Ohio St. 390.

In *The Toledo & Wabash R. W. Co.* v. *Daniels, supra,* the court say:

" Under almost precisely similar legislation, the Supreme Court of Illinois sustained the power sought to be exercised in this case—the power to appropriate land, long after the location and building of the road, for turn-outs, depots, engine-houses and turn-tables.

" In the case referred to—*Chicago, Burlington & Quincy R. R. Co.* v. *Wilson,* 17 Ill. Rep. 127—the court say:

" ' One of these (views) is, that the road itself having been actually completed and running, the power to condemn land, either for the track of the road or for depots or other appendages, is exhausted.

" ' In this view we cannot concur. It would be, indeed, a disastrous rule to hold that a railroad company must, in the first instance, acquire all the ground it will ever need, for its own convenience or the public accommodation. Here our railroads are built through extensive districts of country at

present almost entirely unimproved, and which now afford no business whatever, but which are as fertile as any in the world, and which, ere many years have elapsed, will probably be peopled with an industrious and prosperous population, affording an immense business to the roads which pass through them. Probably not one-tenth of the land in the vicinity of this very road is now in cultivation; but no one acquainted with the subject can doubt that it is destined, at no distant day, to be brought into as high a state of productiveness as any of the older States. This will increase the population ten-fold, and may reasonably be expected to increase the business of the road in the same ratio, and hence there must be a corresponding increase of the rolling stock to do this increased business—requiring, also, a greater amount of machine shops for its repair, as well as an increase of depots and other necessary accommodations.

" ' We cannot suppose that it was the intention of the legislature to oblige the company to acquire all the land in the first instance, which, in any event, it should ever want to do the largest amount of business it may ever hope to attain. The greatest degree of sagacity could hardly determine precisely what conveniences the future might demonstrate to be necessary to do its business with facility.' To which reasoning it may be added, that it is always the interest of the company to condemn and appropriate as largely as practicable at the time of constructing the road, as land is then comparatively cheap, and will almost certainly appreciate by the building and use of the road. There is much more danger that the company will appropriate too much ground, than that it will not appropriate enough, at the inception of its road."

We do not deem it necessary, in view of the conclusion we have arrived at, to consider or pass upon the question whether the appellee acquired a fee simple to the land appropriated.

Having reached the conclusion that the railroad company had not acquired a title to the ground where the telegraph poles were placed, on the east side of the track, we have not deemed it necessary to consider or decide whether such com-

pany possessed power to authorize the Western Union Telegraph Company to place the telegraph poles where they were placed.

Inasmuch as the second paragraph of the answer fails to show that the appellee acquired title to the land in dispute by purchase, donation or condemnation, and fails to show that it had occupied and used the land where the telegraph poles were erected, on the east side of said track, until the year 1869, when such poles were placed there, we are of opinion that it is bad, and that the court below erred in not carrying the demurrer to the reply back to the answer and sustaining the same thereto.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to sustain the demurrer to the answer, and for further proceedings in accordance with this opinion.

### ON PETITION FOR A REHEARING.

WORDEN, J.—We have, on the petition for a rehearing, made some slight modifications in the opinion, as originally filed in this cause, not at all affecting the result. Having made these modifications, the petition for a rehearing is overruled.