THIRD DEPARTMENT, JUNE, 1971

(June 14, 1971) ■

■ PETER KIEWIT SONS' Co., Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 42404.) — Appeal by the State from a judgment of the Court of Claims entered August 26, 1969 which awarded the sum of $47,500 plus appropriate interest for damages sustained by the claimant as the result of the appropriation of a portion of its real property. Approximately seven months before the appropriation the claimant purchased 91.5 acres of land on which was a sizeable deposit of gravel which the claimant, a contractor for a section of the Northway in close proximity to the purchased property, intended to use in whole or in part to supply gravel for the road construction. The State appropriated 26.589 acres of the said property for the actual construction of the Northway and in so doing landlocked approximately 5.67 acres thereof, and further restricted any mining activity by the claimant within certain limits of the fee-taking. The court found that prior to the appropriation the claimant had removed 253,146 cubic yards of gravel from the property, which represented approximately 42% of the total amount, and accordingly found that the value of the property at the time of the appropriation was " obviously less than the price paid ", and on the basis of the testimony, established the before value as $78,500, the after value $31,000 and damages to the claimant's property $47,500, of which $43,500 represented direct damage and $4,000 represented consequential damage. It is apparent from a reading of the record that the court erred when it found that the claimant had removed 253,146 cubic yards of gravel prior to the appropriation. The consensus of the testimony of witnesses was that prior to the appropriation very little material had been removed. It would appear that the amount of gravel which was in fact mined from the remainder of the property does not bear any rational relationship to what amount, if any, the alleged restriction on the mining of gravel precluded a prospective purchaser from being able to mine. It does appear that on the 59.561 acres, the after value was the same as the before value of $1,470.27 per acre (91.5 acres divided into $135,000) which equals $87,570.75. Based upon the acreage value as established by the purchase of the entire tract, the direct damages for the taking of 26.589 acres would be $1,470.27 per acre for a total of $39,092.95. As to the 5.67 landlocked acres, the appraisers were in agreement that severance damage to the property was 90%, and based upon the acreage value, as stated above, such damage would be $7,502.79, the value of the remaining 10% being $833.64. Utilizing this computation, the before value was the purchase price of $135,000 and the after value was $88,404.39 ($87,570.75 plus $833.64) and the resulting damages were $46,595 (rounded),

of which $39,092.95 represented direct damages. If we were to take the 32.3 acres appropriated and land locked by the State and use the purchase price acreage of $1,470.27, the damages would amount to $47,489.72. Under the circumstances it appears that by applying any of the three formulas suggested herein, the award was fair and within the range of testimony. (See *Levin* v. *State of New York*, 13 N Y 2d 87, 92.) The appellant does not dispute the after value as found by the trial court and it is apparent that as to the before value it should have in fact been higher than that found by the trial court. Judgment affirmed, with costs. Herlihy, P. J., Greenblott, Cooke and Simons, JJ., concur; Reynolds, J., dissents and votes to reverse and order a new trial in the following memorandum: I cannot agree in the majority's affirmance of the instant award. Under any of the three formulas suggested by the majority to uphold the award the pivotal figure is the $135,000 purchase price paid for the property by the claimant. It is abundantly clear that this property was purchased by the claimant on December 1, 1960 solely for the gravel deposits thereon and primarily, if not exclusively, for use in the construction of the Northway under State contract 60–8 which claimant had previously entered on October 17, 1960. Moreover, there is proof that the plans used by the claimant for the bidding on contract for construction of project 60–8 indicated that on the next bid (61–20) the Northway would cut through the subject property. Thus the $135,000 purchase price paid by the claimant does not represent its true market value, but an enhanced value to the claimant. And the only other alleged comparable utilized by claimant's appraiser is in exactly the same situation. Both valuations as advanced by claimant's expert for these properties, in my opinion, are not representative of market value but reflect the effect of very special and peculiar circumstances, particularly, since there are only the most vague references to any additional gravel demands in the area and no record of sales or leases of gravel pits or deposits. (See *United States* v. *Whitehurst*, 337 F. 2d 765.) Accordingly, I am convinced that the $135,000 purchase price paid here for the land by the claimant is not reflective of its market value outside of the special circumstances here presented (*Matter of Water Commissioners*, 3 Edw. Ch. 552) and should not have been utilized as the basis for computing the award. Moreover, the deposits of gravel should not even have been considered here without more proof that there would be an outside demand for such gravel within the reasonably close future (*New York Cent. R. R. Co.* v. *Maloney*, 234 N. Y. 208, 218; *Bojo* v. *State of New York*, 28 A D 2d 739; *Matter of Ford* [*Watson Natural Stone Co.*], 24 A D 2d 806). Finally, I would point out in any event the patently incorrect valuation proceedings of adding or subtracting cubic yards of deposits at so many cents per cubic yard to reach market values (e.g., *Zogby* v. *State of New York*, 26 A D 2d 899; *Belott* v. *State of New York*, 26 A D 2d 749; *Berzal & Co.* v. *State of New York*, 8 A D 2d 886; *Matter of Huie* [*City of New York — Allen*], 1 A D 2d 500). Accordingly, I vote to reverse and remand for a new trial.